Argued December 4, 1970, affirmed March 10, 1971

TWOMBLEY, *Respondent, v.* WULF ET AL, *Appellants.*

482 P2d 166

*Allen L. Fallgren*, Portland, argued the cause and filed a brief for appellants.

*William E. Hanson*, Portland, argued the cause for respondent. With him on the brief were Dardano & Mowry, Portland.

Before O'CONNELL,* Chief Justice, and DENECKE, TONGUE, and BRYSON, Justices.

BRYSON, J.

This is an action on a written contract. The case was tried without a jury and defendants appeal from the judgment in favor of the plaintiff.

The following facts are not disputed. Plaintiff was doing business as Hillsboro Yellow Cab and Hillsboro Telephone Answering Service. By the terms of a contract dated May 15, 1968, plaintiff sold both businesses with all of the assets, except accounts receivable, to defendants for $4,000. The assets included three taxicabs, one of which was a 1967 Checker taxicab. The contract of sale also provided: "Buyers agree to assume an approximate $2,000 indebtedness on the 1967 Checker Cab."

The $2,000 indebtedness on the Checker cab represented the balance due on a retail installment sales contract held by the U. S. National Bank of Oregon (hereinafter bank) and signed by plaintiff, as purchaser. The defendants took possession of the Checker cab on May 15, 1968, and thereafter made two installment payments to the bank. However, defendants defaulted on the remaining monthly payments and the bank repossessed the cab. The cab was sold for $1,500, which amount was credited to the balance due under the installment sales contract, leaving a deficiency balance due and owing of $1,065.20. The installment sales contract was eventually assigned to Bonded Credit Company (hereinafter Bonded Credit)

---

* O'Connell, C. J., did not participate in the decision of this case.

who began collection proceedings against the plaintiff for the deficiency balance. When pressed for payment, plaintiff executed and delivered to Bonded Credit her negotiable 90-day promissory note, payable in the principal amount of the deficiency. The note remained unpaid at the time of trial.

Plaintiff's complaint incorporates by reference the contract between her and defendants for the sale of the Hillsboro businesses and alleges breach of that contract in that defendants failed to pay the indebtedness on the Checker cab. Plaintiff further alleges the subsequent repossession and sale of the cab and that the sale left a deficiency balance due of $1,065.20 on the installment sales contract and prayed for judgment in that amount. The defendants admit the execution and terms of the contract between them and plaintiff but generally deny the other allegations in the complaint. In addition, defendants affirmatively allege as a set-off that, in accordance with the terms of the contract, plaintiff expressly agreed to satisfy any business debts existing at the time of the sale of the businesses (excepting the balance due on the Checker cab installment sales contract); that plaintiff failed to pay such debts and that the same were paid by defendants.

The trial court found "[t]hat the allegations contained in plaintiff's Complaint are true, and that the allegations contained in defendants' Affirmative and Partial Defense are true, * * *"; and granted judgment to plaintiff for the full amount of her prayer less $150, the full amount defendants claimed as a set-off.

The defendants' first assignment of error is that the trial court erred in allowing plaintiff to re-

cover for a loss she never sustained. Their contention is that mere execution and delivery of the promissory note to Bonded Credit does not support the judgment in favor of the plaintiff in the amount of the note; in defendants' words, "[p]laintiff paid nothing. Plaintiff sustained no damages."

██ The defendants' contention must be considered in the context of the relationship which arose between them and the plaintiff upon execution of the written contract for the sale of plaintiff's businesses and assets. That relationship is: Upon executing the contract wherein defendants agreed to assume plaintiff's indebtedness to the bank on the retail installment sales contract covering the Checker cab, the parties to the contract, with respect to that covenant, created a relationship of involuntary suretyship whereby the defendants became the principal obligors on the indebtedness due for the balance of the cab, and the plaintiff acquired the privileges of a surety. *See Hurst v. Merrifield*, 144 Or 78, 85, 23 P2d 124 (1933); *Hoffman v. Habighorst*, 38 Or 261, 268, 269, 63 P 610 (1901); A. Stearns, *Suretyship* (5th ed) § 2.3 at 10; Restatement 239, *Security* § 83(c); 50 Am Jur 910, *Suretyship* § 11; 72 CJS 532, *Principal and Surety* § 40. As surety on the indebtedness, plaintiff's right of action against defendants accrued at the time she paid the indebtedness for which defendants were primarily liable. Restatement 275, *Security* § 104(1)(b); 50 Am Jur 1050, *Suretyship* § 223; 72 CJS 758, *Principal and Surety* § 301.

██ The rule is quoted in 72 CJS 772, *Principal and Surety* § 309:

"[f]or purposes of reimbursement from the principal, payment may be sufficiently made by a surety by the passing of a *negotiable security*, and

payment will be deemed to have been made by the surety if he gives his own *note* * * * where it is accepted by the creditor as payment; and *the surety is entitled to reimbursement from the principal before the instrument so accepted by the creditor has been paid.*" (Emphasis added.)

Restatement 281, *Security* § 107, is to the same effect:

"Where a creditor accepts from the surety in discharge of the principal's matured duty a negotiable instrument on which the surety is liable for an amount equal to or less than the amount due from the principal, the principal is under an immediate duty to reimburse the surety to the amount of the instrument."

Thus, it only remains to be established that the creditor, Bonded Credit, accepted plaintiff's negotiable promissory note as payment of the deficiency balance owed by plaintiff on the installment sales contract covering the Checker cab. We believe that was established by the testimony of Mr. Hearn, the operator of Bonded Credit. On direct examination, Mr. Hearn testified that plaintiff had paid him $1,065.20. On cross-examination he testified that plaintiff had paid him in that amount by executing and delivering to him, her promissory note. When called as a witness for defendants, Mr. Hearn testified to the following:

"Q (By Mr. Fallgren) Do you have any type of—Is there any other agreement between you and Mrs. Twombley as to how you'll be paid, aside from that note?
"A No.
"* * * * *.

"Q And the amount you expect to collect is still $1,065?
"A Yes.
"* * * * *."

The court did not err, as contended in the defendants' first assignment of error.

■ The defendants' next assignment of error is that the trial court's refusal to hold that the transfer of title on the Checker cab was a condition precedent to defendants' duty to assume the contract on said Checker cab. In other words, defendants contend that the plaintiff should have executed the assignment provision on the 1967 Checker cab certificate of title before defendants would have the obligation to assume and pay the balance on the installment sales contract, and relies upon *Porter v. Meier Chevrolet-Buick,* 254 Or 482, 461 P2d 527 (1969); and *So. Seattle Auto Auction, Inc. v. Ladd,* 230 Or 350, 370 P2d 630 (1962). In *Porter, supra,* plaintiff agreed to buy the assets of the defendant corporation, which consisted of an automobile agency which held a franchise with Chevrolet Division of General Motors. The plaintiff paid $5,000 to bind the agreement which provided, in effect, that such an agreement would be binding only at such time as the Chevrolet Division of General Motors should grant buyer a selling agreement in Reedsport, Oregon. The plaintiff thought he had sufficient financing but it failed. Plaintiff sued to recover the $5,000 and the court held "until the condition was met the contract did not come into operative existence * * *." The case is not in point because in the instant case, the contract between the parties did come into operative existence and the defendants took possession of the business and assets.

*So. Seattle Auto Auction, Inc., supra,* merely stands for the proposition that "failure of the transferee of the certificate of title to notify the department of motor vehicles of the transfer, as required by ORS 481.405, does not affect the validity of the sale, but

the transferee's 'title is good against the world, except such persons, creditors or innocent purchasers who have been misled by the record or by failure to make the proper changes in the record.' * * *." We fail to see wherein the case is applicable to the facts of this case.

The plaintiff testified that she gave the defendants the "payment book"; that she went to the U. S. National Bank, Hillsboro, and the bank asked her to have the defendants come in as they would have to "make out a new contract"; that she related this information to the defendants. Plaintiff had never refused to transfer her interest or the certificate of title covering the Checker cab. In fact, the contract between the parties recites that plaintiff "does hereby convey and transfer to the purchasers [defendants] all of her right, title, and interest in * * * 1. 1967 Checker Taxi Cab (subject to encumbrances)." We must remember that legal title to the vehicle was vested in the bank, who had possession of the certificate of title.

There is sufficient evidence to support the trial court's finding and we do not feel, under the facts of this case, a transfer of plaintiff's interest as registered owner on the certificate of title was a condition precedent to defendants' duty to assume the contract on the Checker cab. We find this assignment of error to be without merit.

■ Defendants' last assignment of error is that "[p]laintiff did not show that she was entitled to recover on a debt owed to a third party," the contention being, "to be subrogated one must show payment of the debt." This is not a matter of subrogation nor does the complaint plead subrogation and payment. It is an action on the written contract and plaintiff is not

required to proceed as in a matter of subrogation. The theory of subrogation does not accord with the intention of the parties and would violate the general principles of contract in denying to the plaintiff a right to sue on that contract. *See* Note, 38 Harv L Rev 502. We find no merit in this assignment of error.

The judgment is affirmed.