533 S.E.2d 662

Walter Alan LIVELY and Leslie
W. Lively, Plaintiffs Below,
Appellants,

v.

Robert J. RUFUS, Rufus & Rufus Accounting Corporation, and Danny R. Lester, Defendants Below, Appellees.

No. 26651.

Supreme Court of Appeals of
West Virginia.

Submitted April 11, 2000.

Decided June 16, 2000.

Christopher S. Smith, Hoyer, Hoyer, Smith & Miesner, Charleston, West Virginia, Attorney for the Appellants.

James M. Brown, Brown & Levicoff, P.L.L.C., Beckley, West Virginia, Attorney for the Appellees, Robert Rufus and Rufus & Rufus Accounting Corp.

John H. Shott, Shott, Gurganus & Williamson, Bluefield, West Virginia, Attorney for the Appellee, Danny R. Lester.

DAVIS, Justice:

In an action alleging various counts of wrongdoing that resulted in the ultimate destruction of a business in which they held an

ownership interest, Walter Alan Lively and Leslie Lively appeal from an order of the circuit court of Raleigh County denying their motion for a new trial. On appeal, the Livelys argue that the circuit court erred by limiting their damages to the equity value of the destroyed business, by utilizing a verdict form that allowed the jury to resolve the case by answering only a single interrogatory relating to damages, and by refusing to admit evidence of a settlement agreement for a purpose other than to prove the defendants' liability or the validity or amount of the Livelys claim. We conclude that the proper measure of damages for the destruction of an established business is the difference between the fair market value of the business before and after its destruction. In addition, we find that, generally, the verdict form used in a typical, nonbifurcated, civil trial should ask the jury to decide issues related to liability prior to determining issues of damages. Because the verdict form in the instant case permitted the jury to answer only a single interrogatory that was confusing and contrary to the law and the jury instructions given, the circuit court committed reversible error. Finally, we conclude that the circuit court did not err in refusing to admit into evidence the settlement agreement document offered by the Livelys. For these reasons, the instant case is affirmed in part, reversed in part and remanded for a new trial.

## I.

### FACTUAL AND PROCEDURAL HISTORY

Although the trial in this case was lengthy, the jury made no determination of the defendants' liability. Thus, many of the facts relevant to the underlying dispute remain a matter of contention among the parties. The following is a general summary of the events that are essentially agreed to by the parties. Additional facts relevant to specific assignments of error will be provided in our discussions of those assignments.

Plaintiffs below and appellants herein, Walter Alan Lively (hereinafter "Alan Lively") and his father Leslie W. Lively (hereinafter "Les Lively"),[1] were joint shareholders of a corporation known as Jetah, Inc. (hereinafter "Jetah").[2] Jetah, in turn, owned and operated two Western Steer Steakhouse restaurants located in Beckley and Princeton, West Virginia, respectively.

One of the defendants below, and an appellee, Robert J. Rufus (hereinafter "Rufus"), a certified public accountant, is the sole shareholder of Rufus & Rufus Accounting Corporation, also a named defendant. Rufus performed various accounting and financial services for the Livelys and for assorted corporations in which the Livelys held an ownership interest, including Jetah.

In August, 1992, Alan Lively borrowed $50,000.00 from Geraldine Steinbrecher, another Rufus client. As a condition of the loan, Alan Lively was required to place a certain number of shares of Jetah stock in escrow. The escrow agent was Mr. W. Stanley James, a Huntington, West Virginia, lawyer and also a client of Rufus. In or about February, 1993, Alan Lively defaulted on the loan from Ms. Steinbrecher. By letter dated February 22, 1993, Mr. James notified Alan Lively that he was in default and that the stock would be sold. In June of 1993, the loan remained in default, but the Jetah shares remained in Mr. James' possession. Ultimately, Mr. James foreclosed and sold the Jetah shares to Rufus for $51,000.00. Thereafter, a dispute arose between the Livelys and Rufus over Rufus' ownership of the stock.[3]

Various meetings and discussions were apparently had in an effort to resolve the conflict between the Livelys and Rufus, and to address financial difficulties Jetah was then experiencing. During this time, Rufus asked Mr. Danny R. Lester (hereinafter "Lester"), an additional defendant below, appellee here-

---

1. For ease of reference, Alan Lively and Les Lively will be jointly referred to as "the Livelys."

2. Alan and Les Lively each owned equal shares of Jetah, Inc.

3. The Livelys contend that Rufus wanted complete ownership of Jetah, while Rufus asserts that he merely paid Alan Lively's debt to Ms. Steinbrecher believing that he would subsequently receive reimbursement from Alan Lively in exchange for the Jetah stock.

in, and another of Rufus' clients, to independently manage the Beckley restaurant.[4] Thereafter, Rufus sold his Jetah stock to Lester for $58,500.00.[5]

In August, 1993, a "Settlement and Indemnification Agreement" resolving the dispute surrounding Jetah was signed by the Livelys, Rufus, and Lester. Each signed the document in their individual capacities and as representatives of the various companies involved. However, Alan Lively had filed an action for personal bankruptcy. Therefore, the "Settlement and Indemnification Agreement" was subject to approval by the bankruptcy court. The agreement was rejected by the bankruptcy court and never took effect.

Meanwhile, Beckley National Bank (now Bank One)[6] gave notice of its intent to foreclose on a 1.5 million dollar mortgage loan to Jetah, which was secured by the two restaurants and was personally guaranteed by the Livelys. Rufus and Lester then caused Jetah to file federal bankruptcy reorganization proceedings under Chapter 11.[7] The bankruptcy action was later converted to liquidation proceedings under Chapter 7.[8] After a period of time, the bankruptcy court authorized Beckley National to foreclose on Jetah's restaurant properties. Beckley National sold the Beckley property for $925,000.00, and received approximately $400,000.00 for the Princeton property. The Livelys assert that, after the foreclosure, they both remained personally liable for Jetah's debt of approximately $597,000.00, excluding interest, to Beckley National Bank. In addition, Alan Lively remained personally liable for Jetah's debt of $594,201.55 to Mrs. Lois Bowie, who held a second lien on Jetah's assets. Les Lively also remained personally liable for Jetah's debts to food vendors totaling $132,048.34.

In September, 1994, the Livelys' filed a civil action against Rufus, Rufus & Rufus Accounting Corporation, and Lester, alleging various causes of action arising from the above-described course of events. A jury trial was had and, after the conclusion of the evidence, the jury was presented with a verdict form that permitted it to cease deliberations if it concluded that Jetah's value was "zero or less" on June 17, 1993, the day that Rufus acquired the Jetah stock. The jury concluded that Jetah's value was zero on that date and reported back to the circuit court. The court then entered judgment in favor of the defendants', and the Livelys' filed a motion for a new trial. By order entered January 7, 1999, the circuit court refused the Livelys' motion. It is from this order that the Livelys now appeal.

## II.

### STANDARD OF REVIEW

With regard to our standard for reviewing a circuit court's order on a motion for a new trial, we have explained:

As a general proposition, we review a circuit court's rulings on a motion for a new trial under an abuse of discretion standard. *In re State Public Building Asbestos Litigation*, 193 W.Va. 119, 454 S.E.2d 413 (1994).... Thus, in reviewing challenges to findings and rulings made by a circuit court, we apply a two-pronged deferential standard of review. We review the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discre-

---

4. At some earlier point, Lester had entered into negotiations with Alan Lively regarding Lester's purchase of Jetah's Princeton restaurant. In connection with these negotiations, Lester had begun managing that restaurant. Rufus contends that he believed the Livelys agreed that, due to the dispute between them, the Beckley restaurant should be managed by an independent person or entity. Rufus states that he asked Lester to take over management of the Beckley restaurant as Lester was already managing the Princeton restaurant. The Livelys aver that they never agreed Lester should manage either of the restaurants owned by Jetah.

5. Under the terms of the sale, Lester paid Rufus $25,500.00 in cash and signed a negotiable promissory note for the remaining $33,000.00.

6. For ease of reference the bank will be referred to throughout this opinion as Beckley National.

7. *See* 11 U.S.C. § 1101, et seq. (1994 ed.).

8. See 11 U.S.C. § 701, et seq. (1994 ed.).

tion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a *de novo* review.

*Tennant v. Marion Health Care Found., Inc.*, 194 W.Va. 97, 104, 459 S.E.2d 374, 381 (1995).

We have further explained that:

"Although the ruling of a trial court in granting or denying a motion for a new trial is entitled to great respect and weight, the trial court's ruling will be reversed on appeal when it is clear that the trial court has acted under some misapprehension of the law or the evidence." Syl. pt. 4, *Sanders v. Georgia–Pacific Corp.*, 159 W.Va. 621, 225 S.E.2d 218 (1976).

Syl. pt. 1, *Andrews v. Reynolds Mem'l Hosp., Inc.*, 201 W.Va. 624, 499 S.E.2d 846 (1997). Moreover, "[a]n appellate court is more disposed to affirm the action of a trial court in setting aside a verdict and granting a new

trial than when such action results in a final judgment denying a new trial." Syl. pt. 4, *Young v. Duffield*, 152 W.Va. 283, 162 S.E.2d 285 (1968), *overruled on other grounds by Tennant v. Marion Health Care Found., Inc.*, 194 W.Va. 97, 459 S.E.2d 374. With due consideration for these standards, we proceed to review the substantive issues raised by the parties. Additional standards of review directed more specifically to individual assignments of error are discussed in connection with those assignments.

## III.

## DISCUSSION

### A. Damages for the Destruction of a Business

The Livelys' first argue that the circuit court erred in limiting their damages for the destruction of their business [9] to the stock, or equity, value of the business.[10] The specific

9. Any damages to which the Livelys may be entitled for the general destruction of a business must be asserted by them in a shareholder's derivative action. While the Livelys contend that, notwithstanding Jetah's bankruptcy, their claims may properly be brought in a derivative action, there is nothing in the record before this Court to indicate that the present action is, in fact, a derivative action. *See infra* note 10.

10. In this appeal, the Livelys challenge the measure of recovery as it relates to general damages for the destruction of a business. We note that, at trial, the Livelys presented various theories of liability, the measures of damages for which may differ from damages for the general destruction of a business. However, the Livelys have not presented to us on appeal any questions related to those other theories. We further note that the dispute among the parties has resulted in a very complex cause of action. This appeal has raised numerous questions, which were not asserted by the parties, as to whether the case was properly tried below. Omissions in the designated record and the way in which the issues presented on appeal were framed, preclude our thorough review of the additional questions. However, because we remand this case for a new trial, we note some of our concerns so that any errors that may have occurred in the earlier proceedings may, perhaps, be avoided on remand. Initially, we note that Rufus has asserted in his appellate brief that, as shareholders, the Livelys have standing only to assert damages for the diminution in value, if any, of their ownership interest in Jetah as represented by the fifty percent of the outstanding common stock of Jetah owned by

them. The Livelys respond that the standing issue was previously resolved in their favor by the circuit court. They further contend that their claims are derivative and may properly be brought by them in their shareholder capacity, notwithstanding Jetah's bankruptcy, if the bankruptcy trustee refuses to act. Portions of the record containing the parties' arguments below and the circuit court's ruling on the issue of standing were not designated by the parties. Therefore, we cannot determine the capacity in which the circuit court permitted the Livelys to pursue their claims. Furthermore, no argument on the issue of standing was fully developed in the parties' appellate briefs. If the Livelys were permitted by the circuit court to proceed with their claims in their capacity as shareholders of Jetah, then their damages would necessarily be limited to the value of their Jetah stock, which represents the limit of their potential losses. If, on the other hand, the circuit court somehow permitted them to assert claims belonging to Jetah itself as some type of derivative action, then questions related to the participation of Jetah's bankruptcy trustee arise. Similarly, a myriad of questions involving shareholder's derivative suits also arise. *See generally* 19 Am. Jr.2d *Corporations* §§ 2243–2502 (1986); 12B William Fletcher Cyclopedia of the law of Private Corporations § 5911 (rev.perm. ed.1984); 13 William Fletcher Cyclopedia of the law of Private Corporations §§ 5939–6045.50 (rev.perm. ed.1995). Because the record presented on appeal is inadequate for us to determine the propriety of any rulings made by the circuit court on the issue of standing, and because this issue has been inadequately briefed by the parties, our

ruling by the circuit court of which they complain prohibited them from arguing or presenting evidence of certain debts that were owed by Jetah and guaranteed by the Livelys. By not allowing them to present this evidence as a measure of damages, the Livelys' submit, the court unfairly limited their damages to the amount by which Jetah's assets exceeded its liabilities.[11]

The damages herein addressed are compensatory in nature. We have previously explained that:

> Primarily, the aim of compensatory damages is to restore a plaintiff to the financial position he/she would presently enjoy but for the defendant's injurious conduct. In this manner, "[c]ompensatory damages indemnify the plaintiff for injury to property, loss of time, necessary expenses, and other actual losses. They are proportionate or equal in measure or extent to plaintiff's injuries, or such as measure the actual loss, and are given as amends therefor."

5C Michie's Jur. *Damages* § 7, at 46–47 (1998) (footnotes omitted). "[T]he general rule in awarding damages is to give compensation for pecuniary loss; that is, to put the plaintiff in the same position, so far as money can do it, as he would have been [in] if ... the tort [had] not [been] committed." 5C Michie's Jur. Damages § 18, at 63 (footnote omitted).

*Kessel v. Leavitt,* 204 W.Va. 95, 187, 511 S.E.2d 720, 812 (1998), *cert. denied,* 525 U.S. 1142, 119 S.Ct. 1035, 143 L.Ed.2d 43 (1999). See also *Yates v. Crozer Coal & Coke Co.,* 76 W.Va. 50, 55, 84 S.E. 626, 628 (1914) ("[C]ompensatory damages [are] ... damages proportionate or equal in measure or extent to plaintiff's injuries.").

In accordance with this general principle, many courts agree that the measure of damages for the destruction of an established business is the difference between the value of the business prior to the wrongful act and the value following the wrongful act. *See Mattingly, Inc. v. Beatrice Foods Co.,* 835 F.2d 1547, 1559 (10th Cir.1987) ("The proper measure of recovery for the destruction of a business is the '*difference between the ... market value of the business before and after the injury.*'" (citations omitted)), *vacated on other grounds,* 852 F.2d 516 (10th Cir.1988); *Taylor v. B. Heller & Co.,* 9 Ohio Misc. 104, 108, 364 F.2d 608, 612 (6th Cir.1966) ("The law of Ohio, which governs in this diversity action, recognizes the action for damages for destruction of a business as measured by the difference between the value of the business before and after the injury or destruction." (citations omitted)); *In re Snead,* 1 B.R. 551, 556 (1979) (" 'Where a regular and established business is injured, interrupted, or destroyed, the measure of damages is the diminution in value of the business by reason of the Wrongful Act, with interest; it is the *net* loss and *not* diminution in *gross* income [sales].' " (quoting 25 C.J.S. *Damages*

---

opinion is strictly limited to those legal issues expressly raised by the parties hereto and reflected in the designated record. *See State v. Honaker,* 193 W.Va. 51, 56, 454 S.E.2d 96, 101 (1994) ("In a long line of unbroken precedent, this Court has held that the responsibility and burden of designating the record is on the parties and that appellate review must be limited to those issues which appear in the record presented to this Court." (footnotes omitted) (citation omitted)). *See also Albright v. White,* 202 W.Va. 292, 298 n. 9, 503 S.E.2d 860, 866 n. 9 (1998) (declining to address an issue that was inadequately briefed); *Bowers v. Wurzburg,* 202 W.Va. 43, 53 n. 18, 501 S.E.2d 479, 489 n. 18 (1998) (same); *Ohio Cellular RSA Ltd. Partnership v. Board of Pub. Works of W. Va.,* 198 W.Va. 416, 424 n. 11, 481 S.E.2d 722, 730 n. 11 (1996) (same).

**11.** The Livelys cite three cases in support of their contention that they should be awarded damages for loan deficiency amounts. *See First Nat'l*

*Bank of Durant v. Trans Terra Corp., Int'l,* 142 F.3d 802 (5th Cir.1998); *St. Paul at Chase Corp. v. Manufacturers Life Ins. Co.,* 262 Md. 192, 278 A.2d 12 (1971); *Twombley v. Wulf,* 258 Or. 188, 482 P.2d 166 (1971). As the circuit court aptly noted, these cases do not support the Livelys' argument. In all of these cases, the amount of the loans, or the amount of obligations to pay certain funds, were used to calculate damages because the injury suffered was directly related to the loans or obligations. For example, in *First National Bank of Durant,* a lawyer was sued after rendering an inaccurate title opinion that was relied upon by the plaintiff bank in agreeing to fund a large loan. 142 F.3d 802. The court in that case concluded that the lawyers negligence was the proximate cause of the banks injuries and the proper measure of damages was the amount the bank paid out on the loan minus the bank's recoveries on the loan. *Id.* Here, on the other hand, the loans guaranteed by the Livelys' were in no way related to the claims they asserted against the defendants.

§ 90b)); *Wagenheim v. Alexander Grant & Co.*, 19 Ohio App.3d 7, 17, 482 N.E.2d 955, 967 (1983) ("When an established and ongoing business is wrongfully injured or destroyed, the correct rule for determining the recovery should be the difference between the value of the business before and after its injury or destruction." (citation omitted)). *Cf. Sawyer v. Fitts*, 630 S.W.2d 872, 874–75 (Tex.Ct.App.1982) (holding, in a case where a business was physically destroyed, that "the proper measure of damages for destruction of a business is measured by the difference between the value of the business before and after the injury or destruction."). *See generally* 22 Am.Jur.2d *Damages* § 640, at 703 (1988) ("[T]he proper measure of damages for destruction of a business is not lost profits, but the difference between the value of the business before and after the defendant's wrongful acts." (footnote omitted)); 25 C.J.S. *Damages* § 90b, at 978 (1966) ("Where a regular and established business is injured, interrupted, or destroyed, the measure of damages is the diminution in value of the business by reason of the wrongful act, ... it is the net loss, and not diminution in gross income." (footnotes omitted)); 5C Michie's Jur. *Damages* § 37, at 105 (1998) ("Where a regular and established business is injured, interrupted or destroyed, the measure of damages is the diminution in value of the business by reason of the wrongful act, with interest; it is the net loss and not diminution in gross income sales." (footnote omitted)).

In *Mattingly, Inc. v. Beatrice Foods Co.*, the court further recognized that:

> In determining such values before and after destruction of the business, market value should be used. *See Restatement (Second) of Torts* § 912, illustration 10 (1977). "As a general rule, market value is the highest price a purchaser is willing to pay for property, not being under compulsion to buy, and the lowest price a seller is willing to accept, not being under compulsion to sell." *United States v. Hatahley*, 257 F.2d 920, 923 n. 2 (10th Cir.1958).

835 F.2d 1547, 1559 (additional citations omitted).

■ Based upon the foregoing, we hold that the proper measure of damages for the destruction of an established business is the difference between the fair market value of the business before and after its destruction.

Having established the proper measure of damages for the destruction of a business, we turn to the Livelys' argument that the circuit court erred in prohibiting them from presenting, as evidence of their damages, certain debts for which they remained liable after the liquidation of Jetah. This very issue was addressed by the Court of Appeals of Ohio in *Wagenheim v. Alexander Grant & Co.*, 19 Ohio App.3d 7, 482 N.E.2d 955 (1983). In *Wagenheim*, the court, while discussing whether a corporate plaintiff had met its burden of proving its damages, noted that the plaintiff had presented evidence of claims filed by its creditors as proof of the amount of damages it had sustained. 482 N.E.2d at 968. Explaining the proper use of such evidence, the court stated that "[w]hile these figures might have been helpful in determining the value of the corporation, they could not by themselves be the basis of a recovery. The creditors' claims represent debts which [the plaintiff] was already responsible for, regardless of defendant's actions." *Id. See also Mattingly, Inc. v. Beatrice Foods Co.*, 835 F.2d 1547, 1560 ("While claims by creditors may be helpful in determining the value of a business, they can not by themselves be the basis of a recovery." (citation omitted)).

■ A review of the record in the present case, as well as the Livelys' arguments on appeal, reveals that they desired to present evidence of the debts of Jetah, for which they remained liable, as an independent basis for recovery rather than for the purpose of calculating Jetah's market value. Therefore, the evidence was not admissible for the Livelys' intended purpose. As we have previously explained,

> "[t]he West Virginia Rules of Evidence ... allocate significant discretion to the trial court in making evidentiary ... rulings. Thus, rulings on the admission of evidence ... are committed to the discretion of the trial court. Absent a few exceptions, this Court will review evidentiary ... rulings of the circuit court under an abuse of discretion standard." Syl. Pt. 1,

in part, *McDougal v. McCammon*, 193 W.Va. 229, 455 S.E.2d 788 (1995).

Syl. pt. 9, *Tudor v. Charleston Area Med. Ctr., Inc.*, 203 W.Va. 111, 506 S.E.2d 554 (1997). For the foregoing reasons, we conclude that the trial court did not abuse its discretion in refusing to admit evidence of Jetah's outstanding debts as an independent element of recovery for the Livelys.

### B. Propriety of the Verdict Form

The verdict form presented to the jury in this case began as follows:

**PART I  Compensatory Damages**

1. What do you find by the preponderance of the evidence the value of Jetah, Inc. was on June 17, 1993?

$_____

Note: If your answer to Interrogatory No. 1 is "zero or less", you need not answer any further Interrogatories and report back to the Court.

The jury answered this question with a zero, and reported back to the circuit court without answering any additional questions as to Rufus' or Lester's liability.

The Livelys' argue that the circuit court improperly used a special verdict question and thereby caused the jury to answer only one interrogatory that was based upon an erroneous ruling on the measure of damages for the destruction of a business.[12] Rufus and Lester respond that the submission of the special verdict form to the jury was within the trial court's discretion and reflected the proper measure of damages for the petitioners' claims. Rufus and Lester further assert that if the business had no value, the rest of the issues in the case were moot.

We ascertain two issues from the parties' arguments. The first issue is whether part I of the verdict form reflected the proper measure of damages for the destruction of a

business.[13] The second is whether the form appropriately limited the jury's verdict to one interrogatory involving the existence of damages. We address each of these questions in turn.

1. **Measure of Damages.** As we held above, the proper measure of damages for the destruction of a business is the difference between the fair market value of the business before and after its destruction. In fact, the circuit court instructed the jury, in part, that:

> The measure of damages for breach of fiduciary duties depends upon the nature of the breach found by you.
>
> If the breach of fiduciary duty was found by you involved destruction of Plaintiffs' business, the measure of damages would be the difference between the value of the business before and after the injury or destruction.

■ Contrary to the proper measure of damages for the destruction of a business, and the above-quoted instruction given by the trial court, part I of the verdict form merely asked the jury to enter the value of Jetah, Inc. on a particular day, the day Rufus acquired the Jetah stock through a foreclosure sale. This particular question is similar in form to an interrogatory, which is provided for in Rule 49(b) of the West Virginia Rules of Civil Procedure. Regarding this type of verdict, we have previously held that "[a]s a general rule, a trial court has considerable discretion in determining whether to give special verdicts and interrogatories to a jury unless it is mandated to do so by statute." Syl. pt. 8, *Barefoot v. Sundale Nursing Home*, 193 W.Va. 475, 457 S.E.2d 152 (1995). *See also*, Syl. pt. 15, *Carper v. Kanawha Banking & Trust Co.*, 157 W.Va. 477, 207 S.E.2d 897 (1974) ("In absence of statutory requirement, whether a jury shall be compelled to answer special interrogatories before arriving at a general verdict, is a matter resting in the sound discretion of the trial court.").

---

**12.** The parties refer to the verdict form as a "special verdict form." Although the form bears some similarities to the criteria established for a special verdict form in Rule 49(a) of the West Virginia Rules of Civil Procedure, and to the criteria for a general verdict accompanied by interrogatories, which is contained in subsection

(b) of that rule, we note that, as a whole, the form does not technically meet the criteria of Rule 49.

**13.** *See supra* note 10.

We have further explained, however, that "[w]here not required by statute, special interrogatories in aid of a general verdict should be used cautiously and only to clarify rather than to obfuscate the issues involved." Syl. pt. 16, *Carper*, 157 W.Va. 477, 207 S.E.2d 897. In the case *sub judice*, the interrogatory on the value of Jetah was apparently intended to resolve the question of the damages suffered by the Livelys as a result of the destruction of their business. Not only did this question state an incorrect measure of damages, it was also contrary to at least one of the jury instructions on the method to be used by the jury in determining the Livelys' damages, if any, in this case.[14] Furthermore, we find the verdict form was fatally flawed in that it utilized the term "value" when that term was not defined in the interrogatory itself or in the jury instructions. The term "value" in the context of a case such as the one at bar could be intended to refer to the book value of the corporation, the value of the corporation as a going concern, or the accumulated market value of its outstanding corporate stock. Therefore, we conclude that the circuit court abused its discretion in submitting to the jury an interrogatory that was inconsistent with and contradictory to the law and the jury instructions, and otherwise obtuse.[15] Furthermore, we find this to be a reversible error.[16] *See Ingram v. Earthman*, 993 S.W.2d 611, 641 (Tenn.Ct.App.1998) ("Reversal is required ... when the special verdict form is confusing or inconsistent with the trial court's instructions."), *cert. denied*, —— U.S. ——, 120 S.Ct. 445, 145 L.Ed.2d 362 (1999); *Janke v. Duluth & Northeastern R.R. Co.*, 489 N.W.2d 545, 549 (Minn.Ct.App.1992) ("A trial court commits reversible error by giving inconsistent and contradictory instructions on a material issue.... In this case, the trial court's instructions on damages and the damages portion of the special verdict form were inconsistent and confusing.... We conclude that because the instructions on damages were inconsistent and contradictory, a new trial on damages is required." (internal citation omitted)).

**2. Limiting Verdict Form to Damages.** The verdict form in this case asked the jury to first answer an interrogatory related to damages and instructed the jury that if its answer to that question was "zero or less," then it was to cease its deliberations and report to the circuit court. In essence, the jury form was configured such that the jury was to determine an issue related to damages prior to issues related to liability, and, depending upon the jury's determination on damages, to the exclusion of the issue of liability. We deem this configuration to be ill-advised for many reasons.[17]

---

14. The parties did not designate the entire record on appeal. Nevertheless, the excerpts from the record that were designated are voluminous and somewhat disorganized. From this designated record, it appears that an instruction on damages that more closely matched the verdict form interrogatory may have also been given. It is the opinion of this Court, however, that such an instruction, if given, would add to, rather than cure, the confusion created in this case by the inconsistencies between the law, the verdict form, and the jury instructions.

15. We are unpersuaded by Rufus' and Lester's contention that a determination that the business had a value of zero or less rendered all other issues in the case moot. A business with a value of zero or less could, nevertheless, be injured by wrongdoing that created additional debt or further impeded its ability to pay existing debt.

16. If, as Rufus contends, the Livelys claims were asserted only in their capacity as shareholders, *see supra* note 10, this interrogatory, nevertheless, presented an improper measure of the damages in this case requiring reversal. The interrogatory asked the jury to determine the "value" of Jetah on a given day. The proper measure of damages to which a shareholder is entitled is the lost market value of the corporate *stock*, which value may be more or less than the equity or book value of the company.

17. We recognize that in parts II and III of the verdict form the trial court permitted a determination of liability and damages specific to various theories of liability asserted by the Livelys. However, part I of the verdict form, which we have interpreted to be an interrogatory on damages for the destruction of a business, precluded the jury's consideration of liability and compensation for the remaining causes of action. In essence, part I of the verdict form allowed the jury to determine compensation for the destruction of a business without first determining liability. We note that, had the trial court not inserted part I to the verdict form, the remainder of the form may have passed muster.

First, asking a jury to determine damages before liability is inconsistent with the general principle that liability should be determined prior to damages. *See, e.g.,* 9 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure: Civil 2d § 2390 (1995) ("Logically, the existence of liability must be resolved before damages are considered."); *Kinnel v. Mid–Atlantic Mausoleums, Inc.,* 850 F.2d 958, 967–68 n. 12 (3d Cir.1988) (quoting Wright & Miller).

■■■ Determining damages prior to, and to the exclusion of, liability in a typical civil trial also is inefficient and costly. Normally, the plaintiff in a tort action is required to prove both the defendant's liability and the damages he or she has suffered as a result of the defendant's wrongdoing. *Burk v. Huntington Dev. & Gas Co.,* 133 W.Va. 817, 831, 58 S.E.2d 574, 582 (1950) (" 'Where a liability is asserted on the ground of tort, the plaintiff bears the burden of proof of the fact on which the liability rests . . . .' " (citation omitted)); Syl. pt. 8, in part, *Miller v. United Fuel Gas Co.,* 88 W.Va. 82, 106 S.E. 419 (1921) ("In an action for tort, the plaintiff bears the burden of proof . . . ."). *See also Pasquale v. Ohio Power Co.,* 187 W.Va. 292, 310, 418 S.E.2d 738, 756 (1992). ("[T]he burden of proving the elements of damages rests on the plaintiff, and absent proof of any element, it may not be considered."). Thus, the jury in a civil case customarily is compelled to hear *all* of the evidence, on liability as well as on damages. If the jury is then prohibited from rendering a decision on the issue of liability, as was the case in the trial of the instant matter, the time and effort spent on liability issues during trial is lost.[18] In addition to being costly, allowing a jury to decide a full trial on the sole issue of damages unnecessarily encumbers the circuit court's already overburdened docket. *See, e.g.,* Syl. pt. 10, in part, *Toler v. Hager,* 205 W.Va. 468, 519 S.E.2d 166 (1999) ("In the interest of judicial economy, circuit courts should make every effort to correct defective or faulty verdicts and, thereby, avoid costly and time consuming retrials . . . .").

Moreover, the ramifications of requesting a jury to determine damages prior to, and possibly to the exclusion of, liability are not limited just to trial court proceedings. If the case is subsequently appealed and, as in the present proceeding, reversed on damages, the entire case must be tried anew. Thus, the parties and the circuit court must then bear the further expenses of re-litigation. This Court's docket would also be burdened by such a process, as we would be deprived of addressing, in the first instance, all of the issues that may have arisen in the trial. After a retrial, we could then be asked to consider the case for a second time on appeal and to decide issues related to liability that could have been resolved in the first appeal of the case.

Finally, we believe there are still other risks to asking a jury to determine damages before liability in the ordinary civil trial. Placing the jury's initial focus on the amount of damages may impact on their sympathy toward the plaintiff. Where damages are substantial, the jury may be persuaded by the mere size of the damages to assign a higher percentage of fault to the defendant(s) than they might have otherwise. There is also a risk that after a lengthy and complex trial where questions of liability are difficult, a jury may be inclined to assign no damages in order to avoid a protracted deliberation on liability issues.

■■■ For these several reasons, we hold that, generally, the verdict form used in a typical, nonbifurcated, civil trial should ask the jury to decide issues related to liability prior to deciding the issues relating to damages.[19] Because the verdict form used in the case *sub judice* permitted the jury to resolve the issue of damages without addressing questions of liability, we find that the circuit court erred in submitting it to the jury over the Livelys' objections.

**18.** The present case took more than three weeks to litigate.

**19.** If a case should arise where, for some reason, it is preferable to ask the jury to address damages first, the verdict form should nevertheless require the jury to determine the liability issues. Moreover, we note that this opinion is limited to trials that have not been bifurcated. Our discussion and decision herein in no way relates to bifurcated or reverse-bifurcated trials.

## C. Admission of the "Settlement and Indemnification Agreement"

The Livelys' assert various reasons the "Settlement and Indemnification Agreement," which had been negotiated by the parties to the underlying law suit and then rejected by the bankruptcy court, should have been admitted into evidence pursuant to the provision of Rule 408 of the West Virginia Rules of Evidence allowing the admission of a compromise agreement for a purpose other than to "prove liability for or invalidity of the claim or its amount." [20] Following a brief review of the appropriate standard for our review of this issue, we will address the Livelys' substantive arguments.

■ As we explained earlier in this opinion, a trial court's rulings regarding the admission of evidence are reviewed for an abuse of discretion. Syl. pt. 9, *Tudor v. Charleston Area Med. Ctr., Inc.*, 203 W.Va. 111, 506 S.E.2d 554. *See also*, Syl. pt. 4, *State v. Rodoussakis*, 204 W.Va. 58, 511 S.E.2d 469 (1998) ("A trial court's evidentiary rulings, as well as its application of the Rules of Evidence, are subject to review under an abuse of discretion standard."). Thus, the decision of whether to admit evidence of compromise offers for a purpose other than to "prove liability for or invalidity of the claim or its amount," W. Va. R. Evid. 408, is within the sound discretion of the circuit court. *See* 1 Franklin D. Cleckley, *Handbook on Evidence for West Virginia Lawyers* § 4–8(F), at 402 (3d ed. 1994) ("If [evidence of settlement negotiations] is offered for another purpose, the court has discretion to admit it." (citing *Bituminous Constr., Inc. v. Rucker Enters., Inc.*, 816 F.2d 965, 968–69 (4th Cir.1987))). *See also Belton v. Fibreboard Corp.*, 724 F.2d 500, 505 (5th Cir.1984) (" 'Whether to admit evidence for another purpose is within the discretion of the trial court; the court's decision will not be reversed in the absence of an abuse of discretion amounting to 'manifest error.' " (citation omitted)).

■ **1. Admissibility of settlement agreement as part of basis for expert opinion.** Prior to trial, defendants Rufus and Lester each filed a motion *in limine* to exclude the "Settlement and Indemnification Agreement" from evidence based upon Rule 408 of the West Virginia Rules of Evidence. The Livelys resisted the motions and argued to the circuit court that the document should be admitted as Mr. Ross Dionne, an expert witness testifying on behalf defendant Rufus, relied upon the document in reaching his opinion in this matter. Counsel for Rufus replied that Mr. Dionne would not refer to the settlement agreement in offering his expert opinion testimony. Consequently, the circuit court concluded that, so long as Rufus did not open the door by offering evidence that his expert relied on the settlement agreement to conclude that defendant Rufus had properly discharged his professional duty, then the Livelys would not be permitted to cross examine the expert regarding the settlement agreement.

The Livelys argue in this Court that they should have been permitted to question Mr. Dionne regarding the settlement agreement as he indicated in his pre-trial deposition testimony that the settlement agreement had been part of the basis for his expert opinion that Mr. Rufus had properly fulfilled his professional duty to the Livelys. They contend that such a use of the evidence is permissible under Rule 408, as the evidence was offered for a purpose other than proving liability or the amount of their claim.

Under Rule 705 of the West Virginia Rules of Evidence, the Livelys are entitled to require Mr. Dionne to disclose the facts or data

---

**20.** Rule 408 of the West Virginia Rules of Evidence states in full:

Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible. This rule does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations. *This rule also does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.* (Emphasis added).

underlying his opinion: "The expert may testify in terms of opinion or inference and give reasons therefor without first testifying to the underlying facts or data, unless the court requires otherwise. *The expert may in any event be required to disclose the underlying facts or data on cross-examination.*" (Emphasis added). In the present case, the issue of whether the settlement agreement was relied upon by Mr. Dionne in reaching his opinion was thoroughly argued to the circuit court in connection with the defendants' motion *in limine* for the exclusion of that document. The Livelys argued to the court that Mr. Dionne's deposition testimony revealed that he did, in fact, use the settlement agreement in reaching his opinion. On the contrary, the court concluded that Mr. Dionne's deposition testimony did not indicate that his opinion was based upon the settlement agreement and, therefore, the agreement was not admissible under Rule 408.

We have reviewed the portion of Mr. Dionne's deposition testimony asserted by the Livelys in support of their argument, and we cannot say that the circuit court abused its discretion in declining to admit into evidence the settlement agreement.

■ **2. Admissibility of Settlement Agreement to Demonstrate Rufus' motive, and to refute negative evidence regarding the Livelys' conduct.** During trial, the Livelys asked the circuit court to reconsider its earlier ruling that the "Settlement and Indemnification Agreement" was not admissible. The Livelys' argued to the court that the document was admissible under Rule 408 because it demonstrated Rufus' motive in wanting to own the Jetah stock, and because it would have controverted Rufus' assertion that the Livelys had refused any reasonable offer and had caused undue delay.[21]

■ The circuit court considered the Livelys' arguments, and concluded that the danger of unfair prejudice from the admission of the document itself, with all its details, substantially outweighed its probative value.[22] First, the circuit court concluded that the agreement was not sufficiently probative of Rufus' motive as it was too far removed in time from Rufus' assertion that he did not wish to own the stock. Furthermore, the court observed that during the

---

21. Before this Court, the Livelys additionally argue that the "Settlement and Indemnification Agreement" should have been admitted merely because the circuit court had allowed similar evidence involving settlements between the parties to be admitted. Because the Livelys' have failed to demonstrate that this theory was raised to and passed upon by the circuit court, it is not proper for our review. This Court has long recognized that it " 'is limited in its authority to resolve assignments of nonjurisdictional errors to a consideration of those matters passed upon by the court below and fairly arising upon the portions of the record designated for appellate review.' " Syl. pt. 4, in part, *Devane v. Kennedy*, 205 W.Va. 519, 519 S.E.2d 622 (1999) (citations omitted). *See also Tiernan v. Charleston Area Med. Ctr., Inc.*, 203 W.Va. 135, 150 n. 27, 506 S.E.2d 578, 593 n. 27 (1998) (" 'This Court will not pass on a nonjurisdictional question which has not been decided by the trial court in the first instance.' " (citation omitted)); *State ex rel. Clark v. Blue Cross Blue Shield of West Virginia, Inc.*, 203 W.Va. 690, 699, 510 S.E.2d 764, 773 (1998) ("Typically, we have steadfastly held to the rule that we will not address a nonjurisdictional issue that has not been determined by the lower court."); *Powderidge Unit Owners Ass'n v. Highland Properties, Ltd.*, 196 W.Va. 692, 700, 474 S.E.2d 872, 880 (1996) ("[O]ur review is limited to the record as it stood before the circuit court at the time of its ruling."); Syl. pt. 2, *Trent v. Cook*, 198 W.Va. 601, 482 S.E.2d 218 (1996) (" '[T]he Supreme Court of Appeals is limited in its authority to resolve assignments of nonjurisdictional errors to a consideration of those matters passed upon by the court below and fairly arising upon the portions of the record designated for appellate review.' Syl. Pt. 6, in part, *Parker v. Knowlton Const. Co., Inc.*, 158 W.Va. 314, 210 S.E.2d 918 (1975).").

22. Pursuant to Rule 403 of the West Virginia Rules of Evidence, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." As with other evidentiary determinations, this decision was also within the discretion of the circuit court. *McDougal v. McCammon*, 193 W.Va. 229, 236, 455 S.E.2d 788, 795 (1995) ("The balance of prejudice versus probative value required by Rule 403 is reviewed for a clear showing of abuse of discretion." (citation omitted)). *See also Reed v. Wimmer*, 195 W.Va. 199, 206, n. 8, 465 S.E.2d 199, 206 n. 8 (1995) ("As a general matter, the trial court has broad discretion in deciding whether the probative value 'is substantially outweighed by the danger of unfair prejudice[.]' W. Va. Rules of Evid. 403.").

period between Rufus' comments that he did not wish to own the stock and the negotiation of the settlement agreement, the situation facing Rufus had changed.

Second, as to the Livelys' ability to rebut Rufus' assertion that they had refused any reasonable offer and had caused undue delay, the circuit court ruled that as an alternative to admitting the document itself, the Livelys would be permitted to explain their conduct to the jury by questioning witnesses regarding the fact that there had been settlement negotiations. In addition, the circuit court read to the jury a stipulation, which was agreed to by the parties, that explained that the Livelys took no legal action during the period of time that negotiations to resolve the parties' disputes were ongoing.

After a thorough consideration of the parties' arguments and the relevant portions of the record before us, we again cannot conclude that the circuit court abused its discretion in determining that the probative value of the settlement agreement was outweighed by its prejudicial value, and in crafting an alternate method of allowing the Livelys to respond to evidence that was negative to their claims. "Only rarely—and in extraordinarily compelling circumstances—will we, from the vista of a cold appellate record, reverse a trial court's on-the-spot judgment concerning the relative weighing of probative value and unfair effect." *Reed v. Wimmer,* 195 W.Va. 199, 206, n. 8, 465 S.E.2d 199, 206 n. 8 (1995). *See also, State v. Guthrie,* 194 W.Va. 657, 683, 461 S.E.2d 163, 189 (1995) ("In applying Rule 403, it is pertinent whether a litigant has some alternative way to deal with the evidence that it claims the need to rebut that would involve a lesser risk of prejudice and confusion").[23] Consequently, we find that the circuit court did not err by excluding the "Settlement and Indemnification Agreement."

## IV.

## CONCLUSION

For the reasons explained in the body of this opinion, the circuit court's order of January 7, 1999, is reversed and this case is remanded for a new trial not inconsistent with this opinion.

Reversed and Remanded.

---

**23.** The Livelys assert an additional assignment of error complaining that an expert witness testifying on behalf of Rufus was permitted to offer an opinion that was not disclosed during discovery.

Because this case is remanded for a new trial, and the Livelys' are now fully aware of the expert's opinion, we need not address this issue.