594 S.E.2d 314

**STATE of West Virginia ex rel. Thomas L. STANLEY, Petitioner,**

v.

**Virginia SINE, Circuit Clerk of Berkeley County, Respondent.**

No. 31580.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 14, 2004.

Decided Feb. 27, 2004.

John P. Adams, Jessica E. Myers, Public Defender Corporation, Martinsburg, for the Petitioner.

Patrick G. Henry, III, Martinsburg, for the Respondent.

DAVIS, Justice:

The petitioner herein, Thomas Stanley, Esq., requests this Court to issue a writ of prohibition against the respondent herein, Virginia Sine, Circuit Clerk of Berkeley County.[1] Specifically, Petitioner Stanley seeks relief to prohibit Clerk Sine from selecting prospective jurors in sequential alphabetical order and to require her to comply with the random jury selection criteria set forth in W. Va.Code §§ 52–1–6 (1993) (Repl. Vol. 2000) and 52–1–7 (1993) (Repl. Vol. 2000). Upon a review of the parties' arguments, supporting materials, and pertinent authorities, we grant as moulded the requested writ of prohibition.

## I.

### FACTUAL AND PROCEDURAL HISTORY

The petitioner herein, Thomas Stanley, Esq., is an attorney with the Public Defender Corporation in Martinsburg, West Virginia.[2]

---

1. We agree with Clerk Sine's assertion that the circuit judge of Berkeley County should have been made a party to this proceeding. Given the urgency of this matter based upon its far-reaching impact upon all cases currently pending in that jurisdiction, however, we will consider this case with respect to the parties presently before the Court.

2. Co-counsel for Mr. Stanley, Jessica Myers, is currently a law student who has provisionally been admitted to practice in this State pursuant

During his representation of clients in the Circuit Court of Berkeley County, he learned that the respondent herein, Virginia Sine, Circuit Clerk of Berkeley County, selects prospective jurors in sequential alphabetical order from that term of court's jury panel list. Designation of the jury panel list begins with a *source list* consisting of a consolidated listing of licensed drivers and registered voters in Berkeley County, in accordance with the requirements of W. Va.Code § 52–1–5 (1993) (Repl. Vol. 2000).[3] A *master list* is then created every two years by a computer-generated random drawing of 10,000 names from the source list, pursuant to W. Va.Code § 52–1–6(b) (1993) (Repl. Vol. 2000). The *prospective juror list* is then compiled each month through a computer-generated random drawing of 300 names from the master list, as required by W. Va.Code § 52–1–7(a) (1993) (Repl. Vol. 2000).

Upon selection as a member of the prospective juror list, all prospective jurors are sent a questionnaire. After disqualifying jurors who indicate an inability to serve due to non-residence, age, death, or other legal disability, the remaining members of the prospective juror list ultimately comprise the *jury box*.[4] Because the source list and master list are arranged alphabetically, the computerized numbering of the members of the prospective juror list also, coincidentally, is arranged alphabetically. Rather than selecting prospective jurors according to the key number system delineated in W. Va.Code § 52–1–6(c), by which a key number is derived and used to select members of the jury box,[5] the clerk had been directed to start at the beginning of the jury box list and to select prospective jurors in sequential alphabetical order until the desired number of jurors had been attained. It is the selection of prospective jurors pursuant to this se-

to Rule 10 of the West Virginia Rules for Admission to the Practice of Law. *See* W. Va. R. Admiss. Prac. L. 10(b) ("An eligible law student may appear, with a supervising attorney, in any court or before any administrative tribunal in this State on behalf of the State of West Virginia or any indigent person if the person on whose behalf the student is appearing has indicated in writing his or her consent to that appearance and the supervising lawyer has also indicated in writing approval of that appearance[.]").

**3.** Although not referenced in Clerk Sine's recitation of facts, persons comprising the source list may also include those "who have filed a state personal income tax return for the preceding tax year[.]" W. Va.Code § 52–1–5(a)(1) (1993) (Repl. Vol. 2000).

**4.** More specifically, W. Va.Code § 52–1–3(7) (1988) (Repl. Vol. 2000) defines a "jury box" as "any physical, nonelectronic device in which are placed names or identifying numbers of prospective jurors taken from the master list and from which names are drawn at random for jury panels." *Cf.* W. Va.Code § 52–1–3(6) (defining "[j]ury wheel" as "any electronic system in which are located names or identifying numbers of prospective jurors taken from the master list and from which names are drawn at random for jury panels").

**5.** W. Va.Code § 52–1–6(c) (1993) (Repl. Vol. 2000) describes the key number system as follows:

The names or identifying numbers of prospective jurors to be placed in the jury wheel or jury box shall be selected by the clerk at random from the master list in the following manner: The total number of names on the master list shall be divided by the number of names to be placed in or added to the jury wheel or jury box and the whole number next greater than the quotient shall be the "key number", except that the key number shall never be less than two. A "starting number" for making the selection shall then be determined by a random method from the numbers from one to the key number, both inclusive. The required number of names shall then be selected from the master list by taking in order the first name on the master list corresponding to the starting number and then successively the names appearing in the master list at intervals equal to the key number, recommencing if necessary at the start of the list until the required number of names has been selected. Upon recommencing at the start of the list, or if additional names are subsequently to be selected for the jury wheel or jury box, names previously selected from the master list shall be disregarded in selecting the additional names. The clerk is not required to, but may, use an electronic or mechanical system or device in carrying out its duties. (For example, assume a county with a master list of eight thousand nine hundred eighty names, a population of less than fifteen thousand and a desired jury box or wheel containing two hundred names. Eight thousand nine hundred eighty names divided by two hundred is forty-four and nine-tenths percent. The next whole number is forty-five. The clerk would take every forty-fifth name on the list, using a random starting number between one and forty-five.)

quential alphabetical order to which Petitioner Stanley objects in this proceeding.

According to Clerk Sine, all of the jury panels seated in Berkeley County, including those for circuit court, family court, magistrate court, and Martinsburg Municipal Court, are selected in this manner. Petitioner Stanley suggests that the proper method for selecting prospective jurors is enumerated in W. Va.Code § 52–1–7 which requires that the names of prospective jurors be drawn from a properly comprised jury box to ensure their randomness.

Upon Petitioner Stanley's questioning of Clerk Sine as to the origins of the current method of sequential alphabetical selection, she indicated that she had been instructed to proceed in this manner by a Berkeley County circuit judge in approximately 1998. This directive was occasioned by several jurors' complaints that they could not access the designated telephone number to ascertain whether they were required to report for jury duty. In so ruling, the circuit judge had hoped to simplify the manner in which prospective jurors were notified as to whether or not their appearance would be required. Respondent Sine concedes that this directive was made on the record in open court, and was not memorialized by a written administrative or judicial order. Because Clerk Sine indicated that she intends to continue selecting prospective jurors in sequential alphabetical order until a judicial officer directs her to do otherwise, Petitioner Stanley filed the instant writ of prohibition to challenge the propriety of this practice.

## II.

## STANDARD FOR ISSUANCE OF WRIT

■ With regard to the propriety of issuing a writ of prohibition in a particular case, we have held that

[i]n determining whether to grant a rule to show cause in prohibition when a court is not acting in excess of its jurisdiction, this Court will look to the adequacy of other available remedies such as appeal and to the over-all economy of effort and money among litigants, lawyers and courts; however, this Court will use prohibition in this discretionary way to correct only substantial, clear-cut, legal errors plainly in contravention of a clear statutory, constitutional, or common law mandate which may be resolved independently of any disputed facts and only in cases where there is a high probability that the trial will be completely reversed if the error is not corrected in advance.

Syl. pt. 1, *Hinkle v. Black*, 164 W.Va. 112, 262 S.E.2d 744 (1979). Stated otherwise,

[i]n determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

Syl. pt. 4, *State ex rel. Hoover v. Berger*, 199 W.Va. 12, 483 S.E.2d 12 (1996). Mindful of this standard, we proceed to consider the parties' arguments.

## III.

## DISCUSSION

The sole issue presented for resolution by this extraordinary proceeding is whether the statutory law delineating the manner in which prospective jurors should be selected permits prospective jurors to be selected in sequential alphabetical order. Petitioner

Stanley contends that the present method of selecting prospective jurors in sequential alphabetical order is not sufficiently random to comply with the governing common law and statutory requirements mandating the random selection of prospective jurors. *Citing* W. Va.Code § 52–1–1, *et seq.; Toothman v. Brescoach*, 195 W.Va. 409, 465 S.E.2d 866 (1995) (per curiam) (recognizing importance of random jury selection (citing *Taylor v. Louisiana*, 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975))); *Bennett v. Warner*, 179 W.Va. 742, 372 S.E.2d 920 (1988) (observing that random selection of jurors is important public policy recognized by Legislature); *State v. Nuckols*, 152 W.Va. 736, 166 S.E.2d 3 (1968) (finding that same random selection procedures for grand jury panels apply to petit jury panels). In short, Stanley argues that the failure to randomly select prospective jurors unconstitutionally violates a litigant's right to a fair and unbiased jury guaranteed by the Sixth Amendment to the United States Constitution and Article 3, § 14 of the West Virginia Constitution.

Clerk Sine first questions the propriety of the parties to this extraordinary proceeding. As she is subject to the direction and control of the judge or chief circuit judge of the circuit in which she serves, Clerk Sine suggests that the circuit judge or chief circuit judge of Berkeley County should have been joined as a party to this proceeding. *Citing* W. Va.Code §§ 52–1–7(a) (1993) (Repl. Vol. 2000) and 52–1–9(a) (1986) (Repl. Vol. 2000); *Rutledge v. Workman*, 175 W.Va. 375, 332 S.E.2d 831 (1985). As to the merits of this case, Clerk Sine denies that the current method of selecting prospective jurors is improper. Rather, she contends that she has substantially complied with the pertinent authorities delineating the procedure to be followed to ensure randomness. *Citing* W. Va. Code § 52–1–15 (1993) (Repl. Vol. 2000); *Bennett v. Warner*, 179 W.Va. 742, 372 S.E.2d 920 (1988); *State v. Nuckols*, 152 W.Va. 736, 166 S.E.2d 3 (1968). Clerk Sine further suggests that the appropriate remedy to address Petitioner Stanley's complaint is not through a writ of prohibition but through the statutory provision which permits him to raise the propriety of the jury selection procedures in advance of swearing the petit jury for a given case. *Citing* W. Va.Code §§ 52–1–15(a, c).

■ At the outset, we wish to address the propriety of hearing this matter in the context of a prohibition proceeding. Pursuant to the governing statute, W. Va.Code § 52–1–15(c) (1993) (Repl. Vol. 2000), the procedures described therein are the "exclusive means" by which a person may challenge the propriety of the jury selection process in a given case.[6] *Cf.* Syl. pt. 2, *State v. Hankish*, 147 W.Va. 123, 126 S.E.2d 42 (1962) (holding, prior to enactment of W. Va.Code § 52–1–15 in 1986, that "[t]he proper method of challenging, before the trial of a case, alleged irregularities in the selection, drawing, or impaneling of jurors, is by plea in abatement"); *State v. Nuckols*, 152 W.Va. 736, 742, 166 S.E.2d 3, 8 (1968) (same). Despite this statutory directive, the instant case falls

---

**6.** In its entirety, W. Va.Code § 52–1–15 (1993) (Repl. Vol. 2000) provides

(a) Within seven days after the moving party discovers, or by the exercise of due diligence could have discovered, the grounds therefor, and in any event before the petit jury is sworn to try the case, a party may move to stay the proceedings, quash the indictment or move for other relief as may be appropriate under the circumstances or the nature of the case. The motion shall set forth the facts which support the party's contention that there has been a substantial failure to comply with this article in selecting the jury.

(b) Upon motion filed under subsection (a) of this section containing a sworn statement of facts which, if true, would constitute a substantial failure to comply with this article, the moving party is entitled to present, in support of the motion, the testimony of the clerk, any relevant records and papers not public or otherwise available used by the clerk, and any other relevant evidence. The clerk may identify the lists utilized in compiling the master list, but may not be required to divulge the contents of such lists. If the court determines that in selecting a jury there has been a substantial failure to comply with this article, the court shall stay the proceedings pending the selection of the jury in conformity with this article, quash an indictment or grant such other relief as the court may deem appropriate.

(c) In the absence of fraud, the procedures prescribed by this section are the exclusive means by which a person accused of a crime, the state or a party in a civil case, may challenge a jury on the ground that the jury was not selected in conformity with this article.

within that group of cases we previously have identified as "really extraordinary causes," *State ex rel. United States Fid. & Guar. Co. v. Canady*, 194 W.Va. 431, 436, 460 S.E.2d 677, 682 (1995) (internal quotations and citations omitted), to which the extraordinary remedy of prohibitory relief applies. *See also State ex rel. Allen v. Bedell*, 193 W.Va. 32, 37, 454 S.E.2d 77, 82 (1994) (Cleckley, J., concurring) ("[W]rits of prohibition ... provide a drastic remedy to be invoked only in extraordinary situations."); *McConiha v. Guthrie*, 21 W.Va. 134, 140 (1882) ("Prohibition .... issues only in cases of extreme necessity[.]").

██ As noted above, when deciding whether a particular case is appropriate for the issuance of a writ of prohibition, we consider whether other remedies are available and, if they are, whether they will adequately afford the petitioner relief, as well as the likelihood that a trial of the underlying matter "will be completely reversed if the error is not corrected in advance." Syl. pt. 1, in part, *Hinkle v. Black*, 164 W.Va. 112, 262 S.E.2d 744. *Accord* Syl. pt. 4, *State ex rel. Hoover v. Berger*, 199 W.Va. 12, 483 S.E.2d 12. *See also Dankmer v. City Ice & Fuel Co.*, 121 W.Va. 752, 760, 6 S.E.2d 771, 775 (1939) ("The writ of prohibition should not be used except in cases where relief is not available through ordinary channels of practice."); *McConiha v. Guthrie*, 21 W.Va. at 140 ("Prohibition, like all other extraordinary remedies, is to be resorted to only in cases where the usual and ordinary forms of remedy are insufficient and inadequate to afford redress."). Given the exceptional circumstances of this case, it is apparent that the remedies provided by W. Va.Code § 52–1–15 are not sufficient to provide the relief requested by Petitioner Stanley. The remedies provided by § 52–1–15 presuppose that the jury challenge will be limited to the procedures employed in a solitary case rather than a widespread challenge to the jury selection procedures employed in all cases, in all courts, within a particular circuit.

██ Furthermore, the dictates of judicial economy clearly gravitate in favor of deciding this matter as expeditiously as possible. It goes without saying that the far-reaching consequences of the propriety of the jury selection process in Berkeley County affects not only those cases prosecuted by Petitioner Stanley but also the entirety of all judicial proceedings currently pending in that circuit. Failure to resolve the instant controversy at this time would certainly necessitate further proceedings in these cases should we find Clerk Sine to have compromised the statutory juror selection process. In short, "[p]rohibition is a preventive remedy." Syl. pt. 5, in part, *State ex rel. City of Huntington v. Lombardo*, 149 W.Va. 671, 143 S.E.2d 535 (1965). *Cf.* Syl. pt. 1, *Town of Hawk's Nest v. County Court*, 55 W.Va. 689, 48 S.E. 205 (1904) ("Prohibition does not lie where the act complained of has been already done."). Thus, prohibition is an appropriate vehicle by which to consider and decide whether the current method of selecting prospective jurors in Berkeley County is proper and to prevent the perpetuation of improper juror selection practices should we so find. Having thus resolved this source of contention, we now shift our focus to the crux of the instant controversy, *i.e.*, whether selection of prospective jurors in sequential alphabetical order is proper.

The method by which prospective jurors are selected requires a random selection process.

It is the policy of this state that all persons selected for jury service be selected at random from a fair cross section of the population of the area served by the court, and that all citizens have the opportunity in accordance with this article to be considered for jury service and an obligation to serve as jurors when summoned for that purpose.

W. Va.Code § 52–1–1 (1986) (Repl. Vol. 2000). *See also* W. Va.Code § 52–1–7(a) (1993) (Repl. Vol. 2000) (directing that "[t]he chief judge of the circuit, or the judge in a single judge circuit, shall provide by order rules relating to the *random drawing* by the clerk of panels from the jury wheel or jury box for juries in the circuit and magistrate courts" (emphasis added)); W. Va.Code § 52–1–9(a) (1986) (Repl. Vol. 2000) (requiring that "[t]he jurors drawn for jury service shall be assigned *at random* by the clerk to

each jury panel in a manner prescribed by the court" (emphasis added)). In order to achieve this randomness, the Legislature has developed a detailed listing of the procedures circuit clerks are to follow when selecting prospective jurors. *See generally* W. Va. Code §§ 52–1–5 through 52–1–7a. At issue in this case is the composition of the jury box or the final grouping of prospective jurors from which the parties select the jury that will ultimately hear and decide their case.

W.Va.Code § 52–1–6 (1993) (Repl. Vol. 2000) specifies the manner in which prospective jurors are to be randomly selected. To achieve this end, § 52–1–6(c) establishes the key number system to ensure that prospective jurors for the jury box will be selected randomly:

The names or identifying numbers of prospective jurors to be placed in the jury wheel or jury box shall be selected by the clerk at random from the master list in the following manner: The total number of names on the master list shall be divided by the number of names to be placed in or added to the jury wheel or jury box and the whole number next greater than the quotient shall be the "key number", except that the key number shall never be less than two. A "starting number" for making the selection shall then be determined by a random method from the numbers from one to the key number, both inclusive. The required number of names shall then be selected from the master list by taking in order the first name on the master list corresponding to the starting number and then successively the names appearing in the master list at intervals equal to the key number, recommencing if necessary at the start of the list until the required number of names has been selected. Upon recommencing at the start of the list, or if additional names are subsequently to be selected for the jury wheel or jury box, names previously selected from the master list shall be disregarded in selecting the additional names. The clerk is not required to, but may, use an electronic or mechanical system or device in carrying out its duties. (For example, assume a county with a master list of eight thousand nine hundred eighty names, a population of less than fifteen thousand and a desired jury box or wheel containing two hundred names. Eight thousand nine hundred eighty names divided by two hundred is forty-four and nine-tenths percent. The next whole number is forty-five. The clerk would take every forty-fifth name on the list, using a random starting number between one and forty-five.)

W. Va.Code § 52–1–6(c). The question now becomes whether this statutory provision also allows prospective jurors to be selected in sequential alphabetical order.

When examining language employed by the Legislature, we are constrained to read and consider precisely what was written by the legislative drafters. "We look first to the statute's language. If the text, given its plain meaning, answers the interpretive question, the language must prevail and further inquiry is foreclosed." *Appalachian Power Co. v. State Tax Dep't of West Virginia*, 195 W.Va. 573, 587, 466 S.E.2d 424, 438 (1995). Accordingly, "[w]here the language of a statute is clear and without ambiguity the plain meaning is to be accepted without resorting to the rules of interpretation." Syl. pt. 2, *State v. Elder*, 152 W.Va. 571, 165 S.E.2d 108 (1968). *Accord* Syl. pt. 1, *State v. Jarvis*, 199 W.Va. 635, 487 S.E.2d 293 (1997) (" 'A statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect.' Syl. Pt. 2, *State v. Epperly*, 135 W.Va. 877, 65 S.E.2d 488 (1951).").

From the statutory text recited above, it is clear that the plain language of W. Va.Code § 52–1–6(c) does not authorize a method of prospective juror selection other than the procedures delineated therein. " *'Inclusio unius est exclusio alterius,'* the expression that 'one is the exclusion of the others,' has force in this case. This doctrine informs courts to exclude from operation those items not included in the list of elements that are given effect expressly by statutory language." *State ex rel. Roy Allen S. v. Stone*, 196 W.Va. 624, 630 n. 11, 474 S.E.2d 554, 560 n. 11 (1996). Therefore, we

hold that the jury selection procedures enumerated in W. Va.Code § 52–1–6(c) (1993) (Repl. Vol. 2000) do not permit prospective jurors to be selected in sequential alphabetical order. To the extent that Clerk Sine has been selecting prospective jurors in this improper manner, we grant as moulded the requested writ of prohibition.

■ It has also been argued, however, that the presiding circuit judge possesses the ability to establish his/her own rules pertaining to the jury selection process with which the circuit clerk is then obligated to comply. For example, W. Va.Code § 52–1–7(a) instructs that "[t]he chief judge of the circuit, or the judge in a single judge circuit, shall provide by order [7] rules relating to the random drawing by the clerk of panels from the jury wheel or jury box for juries in the circuit and magistrate courts." (Footnote added). Likewise, W. Va.Code § 52–1–9(a) directs that "[t]he jurors drawn for jury service shall be assigned at random by the clerk to each jury panel in a manner prescribed by the court." *See also* W. Va.Code § 52–1–4 (1993) (Repl. Vol. 2000) (indicating that the circuit clerk's selection of potential petit jurors shall be performed "under the supervision of the circuit court … or … the chief judge of the circuit"); W. Va.Code § 52–1–6(a) (endowing circuit court with authority to direct manner in which circuit clerk maintains jury wheel or jury box). While these various statutory provisions do, indeed, afford a circuit judge such latitude, this discretionary power may not be exercised in such a way as to contravene the stated legislative purpose of ensuring randomness in the selection of prospective jurors. We repeatedly have observed in this Opinion that the solitary goal of the jury selection statutes is to ensure "that all persons selected for jury service be selected at random." W. Va.Code § 52–1–1. This goal of randomness is so fundamental to the American judicial system that it is not an ideal peculiar to the courts of this State but a process similarly recognized by the United States Supreme Court as an integral part of the federal court system as well. *See Taylor v. Louisiana,* 419 U.S. 522, 529, 95 S.Ct. 692, 697, 42 L.Ed.2d 690, 697 (1975) ("[T]he policy of the United States [is] that all litigants in Federal courts entitled to trial by jury shall have the right to grand and petit juries selected at random from a fair cross section of the community in the district or division wherein the court convenes." (internal quotations and citation omitted)).

■ In light of the extreme importance of randomness and the role it plays in our judicial system, we simply cannot construe the jury selection statutes as permitting a circuit court judge to establish rules that contravene this purpose, no matter how innocent his/her intent may have been in adopting the same. Accordingly, we hold that a circuit court judge adopting rules governing the selection of prospective jurors pursuant to W. Va.Code § 52–1–7(a) (1993) (Repl. Vol. 2000) must comply with the public policy and stated requirements of the statutory jury selection procedures set forth in W. Va.Code § 52–1–1, *et seq.* Therefore, insofar as the circuit judge of Berkeley County has adopted rules directing Clerk Sine to select prospective jurors in sequential alphabetical order, we grant the requested prohibitory relief. Given that our decision herein involves a determination of a matter of first impression with far-reaching application to all jury trials previously had in Berkeley County since approximately 1998 and those jury trials currently pending in that county's courts, we conclude that the rulings we announce today should apply prospectively only. *See* Syl. pt. 5, *Bradley v. Appalachian Power Co.,* 163 W.Va. 332, 256 S.E.2d 879 (1979) (enumerating criteria court should consider when contemplating "whether to extend full retroactivity").

7. In the case *sub judice,* the parties have indicated that the court's order directing Clerk Sine to select jurors in sequential alphabetical order was not reflected in writing. That portion of W. Va.Code § 52–1–7(a) (1993) (Repl. Vol. 2000) referencing such an order does not indicate whether the order must be written or whether an oral directive will suffice. As the resolution of this conundrum is not necessary to our decision of the issue before us, *i.e.,* jury selection through sequential alphabetical order, we will await a more factually appropriate case in which to address and resolve this query.

108

Finally, in closing we wish to address the catch–22 in which Clerk Sine found herself vis-a-vis the jury selection matters at issue herein. On the one hand, Clerk Sine is obligated to abide by the dictates of the circuit judge of the circuit for which she serves as clerk. We specifically have held that

> [i]t was the intention of the framers of the judicial article (Article VIII) of the *W. Va. Const.* that the clerk of a circuit court, although an independently elected, public official, be subject to the direction and control of the circuit court of the county in which she serves or of the chief judge of that county's circuit court with regard to her court-related duties.

Syl. pt. 1, *Rutledge v. Workman,* 175 W.Va. 375, 332 S.E.2d 831 (1985). Although required to abide by the circuit judge's directive, Clerk Sine was likewise required to comply with the statutory requirements setting forth the proper procedure for jury selection. In this regard, W. Va.Code § 52–1–4 dictates that "[p]otential petit jurors shall be selected by the clerk of the circuit court *pursuant to the provisions of this article* and under the supervision of the circuit court, or in circuits with more than one circuit judge, the chief judge of the circuit." (Emphasis added). We understand the predicament in which the Clerk found herself as she was simultaneously bound to follow the established statutory guidelines and obligated to comply with the circuit judge's jury selection rules. Furthermore, we appreciate the reasons underlying the judge's decision to implement this procedure for jury selection. Unfortunately, the method of jury selection heretofore followed in Berkeley County is not commensurate with the procedure established by the West Virginia Legislature to accomplish this end. Thus, to the extent to which the current jury selection process does not comport with the statutory requirements of W. Va.Code § 52–1–1, *et seq.,* we grant as moulded the requested writ.

## IV.

### CONCLUSION

For the foregoing reasons, we grant the writ of prohibition as moulded.

Writ Granted as Moulded.