IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2023 Term

FILED

November 9, 2023

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

_____

No. 22-0219
_____

STATE OF WEST VIRGINIA,
Plaintiff Below, Respondent,

v.

SHANE ERIC HAGERMAN,
Defendant Below, Petitioner.

_____

Appeal from the Circuit Court of McDowell County
Honorable Rudolph J. Murensky, II, Judge
Criminal Action No. CC-27-2019-F-11

AFFIRMED
_____

Submitted: September 13, 2023
Filed: November 9, 2023

Gloria M. Stephens, Esq.
Welch, West Virginia
Attorney for Petitioner

Patrick Morrisey, Esq.
Attorney General
Andrea Nease Proper, Esq.
Assistant Attorney General
Charleston, West Virginia
Attorneys for Respondent

JUSTICE HUTCHISON delivered the Opinion of the Court.
JUSTICES ARMSTEAD and BUNN concur and reserve the right to file concurring opinions.

# SYLLABUS BY THE COURT

1.     """"Although the ruling of a trial court in granting or denying a motion for a new trial is entitled to great respect and weight, the trial court's ruling will be reversed on appeal when it is clear that the trial court has acted under some misapprehension of the law or the evidence.' Syl. pt. 4, *Sanders v. Georgia–Pacific Corp.*, 159 W.Va. 621, 225 S.E.2d 218 (1976)." Syllabus point 1, *Andrews v. Reynolds Memorial Hospital, Inc.*, 201 W.Va. 624, 499 S.E.2d 846 (1997).' Syllabus point 1, *Lively v. Rufus*, 207 W.Va. 436, 533 S.E.2d 662 (2000)."  Syl. Pt. 1, *State v. White*, 228 W. Va. 530, 722 S.E.2d 566 (2011).

2.     "In reviewing challenges to findings and rulings made by a circuit court, we apply a two-pronged deferential standard of review. We review the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a de novo review."  Syl. Pt. 3, *State v. Vance*, 207 W. Va. 640, 535 S.E.2d 484 (2000).

3.     "To establish a prima facie case of unconstitutional jury selection methods under the Sixth Amendment's fair cross-section requirement, the defendant must show (1) that the group alleged to be excluded is a 'distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that

this underrepresentation is due to systematic exclusion of the group in the jury-selection process." Syl. Pt. 2, *State v. Hobbs*, 168 W. Va. 13, 282 S.E.2d 258 (1981).

4.      "Under the 'plain error' doctrine, 'waiver' of error must be distinguished from 'forfeiture' of a right. A deviation from a rule of law is error unless there is a waiver. When there has been a knowing and intentional relinquishment or abandonment of a known right, there is no error and the inquiry as to the effect of a deviation from the rule of law need not be determined. By contrast, mere forfeiture of a right—the failure to make timely assertion of the right—does not extinguish the error.  In such a circumstance, it is necessary to continue the inquiry and to determine whether the error is 'plain.' To be 'plain,' the error must be 'clear' or 'obvious.'" Syl. Pt. 8, *State v. Miller*, 194 W. Va. 3, 459 S.E.2d. 114 (1995).

5.      "The first inquiry under the 'plain error rule' codified in Rule 52(a) of the West Virginia Rules of Criminal Procedure is whether 'error' in fact has been committed. Deviation from a rule of law is error unless it is waived. Waiver is the intentional relinquishment or abandonment of a known right. When there has been such a knowing waiver, there is no error and the inquiry as to the effect of the deviation from a rule of law need not be determined." Syl. Pt. 6, *State v. Crabtree*, 198 W. Va. 620, 482 S.E.2d 605 (1996).

ii

**HUTCHISON, Justice:**

The petitioner, Shane Eric Hagerman, appeals the March 5, 2022, order of the Circuit Court of McDowell County sentencing him to a determinate term of thirty years in prison for his second-degree murder conviction. In this appeal, the petitioner contends that the circuit court erred by denying his motion for a new trial. He argues that the circuit court violated his right to a randomly selected jury representing a fair cross-section of the community by excluding certain individuals from the jury panel based on the geographic location of their residences. In addition, he asserts that the circuit court committed plain error when it instructed the jury on the offense of voluntary manslaughter. For the reasons set forth below, we find no error and, therefore, affirm the circuit court's order.

## I. Facts and Procedural Background

It is undisputed that the petitioner used a shotgun to kill McKinley Addair, his former brother-in-law, on November 22, 2018. The record indicates that the two were friends, and on the night of the shooting, they were drinking at the petitioner's home with the petitioner's girlfriend, Hannah Muncy, and another male friend, Lee Tessner. According to Ms. Muncy and Mr. Tessner, both the petitioner and victim were intoxicated when they got into an argument that ultimately led to Mr. Addair's death.

On February 21, 2019, the petitioner was indicted on the felony charge of first-degree murder. At his trial, the petitioner claimed that he shot the victim in self-defense. Following three days of testimony, the jury returned a verdict convicting the

1

petitioner of second-degree murder, a lesser included offense of first-degree murder. Thereafter, the petitioner discovered that six individuals who reside in or near the community of Bradshaw, West Virginia, where the shooting occurred, had been selected for the jury panel (hereinafter "the Bradshaw jurors"), but the circuit court had directed the circuit clerk not to call them.[1] After obtaining this information, the petitioner filed a motion for a new trial, asserting that the circuit court violated his constitutional and statutory rights by excluding the Bradshaw jurors from the jury panel.[2]

The trial court held a hearing on the petitioner's motion on December 13, 2021, and by order entered February 22, 2022, denied him a new trial. The circuit court rejected the petitioner's claim that it had erred by excluding the Bradshaw jurors from the jury panel. The court explained in its order:

> The Defendant's first reason in support of his motion [for a new trial] is that the Court unduly attempted to influence the composition of the jury. This is false. No juror was excluded from the case on account of race, color, religion, sex, national origin, economic status or being a qualified individual with a disability. *See* W.Va. Code 51-1-2. The jury was selected at random from a fair cross section of the population of the area served by the court, which is McDowell County. *See* W.Va. Code 52-1-1.
>
> After the Circuit Clerk's Office selected the initial set of jurors for the case, the Court inquired of the Circuit Clerk's

---

[1] The record does not indicate how this information was relayed to the petitioner.

[2] While the petitioner also filed a motion for acquittal and asserted that the trial court had committed other errors at trial, he has not appealed the circuit court's rulings on those issues.

2

Office if any of the jurors lived in the community or neighborhood of the alleged crime. The Court was advised that six jurors lived in the community or neighborhood of the alleged crime. The Court advised the clerk's office not to call them on the initial panel, hoping that the initial panel would be sufficient to sit a jury. Although six from the community or neighborhood were not notified to report, other jurors from surrounding communities were notified to report. . . .

. . . .

There was no systemic disqualification of jurors. The alleged crime occurred in a small tight knit community of approximately two hundred fifty people. The people in this community generally know each other and would be aware of the local knowledge or gossip of a shooting death in their community. The Court would be suspect of any juror who didn't know the parties involved or have some knowledge of the facts of this case.[3]

---

[3] The circuit court also noted that aside from disqualification based on prior knowledge of the crime and/or persons involved, the six jurors would have likely been removed from the jury panel for cause for other reasons. In that regard, the Court stated:

In reviewing these six jurors it is doubtful that any of these would have been allowed to serve on the jury.

One of the six jurors is the father of the Prosecuting Attorney, who is prosecuting the case.

A second juror works for 911, whose supervisor was a witness.

A third juror works for Welch Community Hospital, who had an employee subpoenaed to testify.

A fourth juror is a retired employee from the Department of Health and Human Resources, who appeared in court on behalf of the DHHR, represented by the McDowell County Prosecuting Attorney's Office.

(Footnote added). After the petitioner's motion for a new trial was denied, the circuit court held petitioner's sentencing hearing and, by order entered on March 5, 2022, sentenced him to a determinate term of thirty years in prison. This appeal followed.

## II. Standard of Review

In this appeal, the petitioner contends that the circuit court erred by denying his motion for a new trial. This Court has held:

> """Although the ruling of a trial court in granting or denying a motion for a new trial is entitled to great respect and weight, the trial court's ruling will be reversed on appeal when it is clear that the trial court has acted under some misapprehension of the law or the evidence." Syl. pt. 4, *Sanders v. Georgia–Pacific Corp.*, 159 W.Va. 621, 225 S.E.2d 218 (1976).' Syllabus point 1, *Andrews v. Reynolds Memorial Hospital, Inc.,* 201 W.Va. 624, 499 S.E.2d 846 (1997)." Syllabus point 1, *Lively v. Rufus*, 207 W.Va. 436, 533 S.E.2d 662 (2000).

Syl. Pt. 1, *State v. White*, 228 W. Va. 530, 722 S.E.2d 566 (2011). In addition, we have explained:

> In reviewing challenges to findings and rulings made by a circuit court, we apply a two-pronged deferential standard of review. We review the rulings of the circuit court concerning a

---

> The fifth has a relative involved in a CPS case, in which the McDowell County Prosecuting Attorney's Office is involved.
>
> Juror six was part of an alleged sexual assault investigation, where she complained that she was a victim and was or is still part of an investigation in which the McDowell County Prosecuting Attorney's office is a part thereof.

4

new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a de novo review.

Syl. Pt. 3, *State v. Vance*, 207 W. Va. 640, 535 S.E.2d 484 (2000). With these standards in mind, we consider the issues raised by the petitioner.

### III. Discussion

The petitioner first contends that the circuit court's exclusion of the Bradshaw jurors from the jury panel violated his right to a randomly selected jury representing a fair cross-section of the community as guaranteed by the Sixth Amendment of the United States Constitution,[4] Article III, § 14 of the West Virginia Constitution[5] and West Virginia Code § 52-1-1 (1986).[6] It has long been recognized that "'the selection of

---

[4] The Sixth Amendment of the United States Constitution provides, in pertinent part: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law[.]"

[5] Under Article III, § 14 of the Constitution of West Virginia, "Trials of crimes, and misdemeanors, unless herein otherwise provided, shall be by a jury of twelve men, public, without reasonable delay, and in the county where the alleged offence was committed, unless upon petition of the accused, and for good cause shown, it is removed to some other county."

[6] West Virginia § 52-1-1 provides:

It is the policy of this State that all persons selected for jury service be selected at random from a fair cross section of the population of the area served by the court, and that all citizens have the opportunity in accordance with this article to

a petit jury from a representative cross section of the community is an essential component of the Sixth Amendment right to a jury trial.'" *State v. Hobbs*, 168 W. Va. 13, 23, 282 S.E.2d 258, 265 (1981), quoting *Taylor v. Louisiana*, 419 U.S. 522, 528, 95 S. Ct. 692, 697, 42 L.Ed.2d 690, 697 (1975). In that regard, it has been observed that,

> Community participation in the administration of the criminal law . . . is not only consistent with our democratic heritage but is also critical to public confidence in the fairness of the criminal justice system. Restricting jury service to only special groups or excluding identifiable segments playing major roles in the community cannot be squared with the constitutional concept of jury trial. "Trial by jury presupposes a jury drawn from a pool broadly representative of the community as well as impartial in a specific case . . . (T)he broad representative character of the jury should be maintained, partly as assurance of a diffused impartiality and partly because sharing in the administration of justice is a phase of civic responsibility." (Citations omitted).

*Id.* at 24, 282 S.E.2d at 265-66, quoting *Taylor*, 419 U.S. at 530-31, 95 S. Ct. at 697-98, 42 L.E.2d at 698.

Upon review, we find no merit to the petitioner's contention that the circuit court's exclusion of the Bradshaw jurors from the initial jury panel because they lived in the vicinity of where the alleged murder occurred denied him his right to a randomly selected jury composed of a fair cross section of the community. In *Hobbs*, this Court determined that "[t]he question of [a] constitutionally impermissible exclusion must be examined on a case-by-case basis considering the particular selection method chosen and

---

> be considered for jury service and an obligation to serve as jurors when summoned for that purpose.

6

the size and characteristics of the excluded group and of the local population." *Id.* at 30-31, 282 S.E.2d at 269. In that case, two codefendants convicted of making a false return of the result of votes cast for a candidate in an election argued that they were denied a fair trial because their jury was selected from the Logan County personal property tax rolls. *Id.* at 22, 282 S.E.2d at 264-65. In analyzing whether that jury selection method violated their Sixth Amendment right to a jury representative of a cross section of the community, this Court held:

> To establish a prima facie case of unconstitutional jury selection methods under the Sixth Amendment's fair cross-section requirement, the defendant must show (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

*Hobbs*, 168 W. Va. at 13, 282 S.E.2d at 260, syl. pt. 2.

Applying the *Hobbs* test to this case, we find that petitioner is unable to show that the Bradshaw jurors are a "distinctive" or "cognizable" group in the community. As this Court observed in *Hobbs*:

> A group to be "cognizable" for present purposes must have a definite composition. That is, there must be some factor which defines and limits the group. A cognizable group is not one whose membership shifts from day to day or whose members can be arbitrarily selected. Secondly, the group must have cohesion. There must be a common thread which runs through the group, a basic similarity in attitudes or ideas or experience which is present in members of the group and which cannot be adequately represented if the group is excluded from

7

the jury selection process. Finally, there must be a possibility that exclusion of the group will result in partiality or bias on the part of juries hearing cases in which group members are involved. That is, the group must have a community of interest which cannot be adequately protected by the rest of the populace.

*Id.* at 27, 282 S.E.2d at 267, quoting *United States v. Guzman*, 337 F.Supp. 140, 143-144, (S.D.N.Y.), aff'd, 468 F.2d 1245 (2nd Cir. 1972), *cert. denied*, 410 U.S. 937, 93 S. Ct. 1397, 35 L.Ed.2d 602 (1973).  While it is doubtful that any of the cognizable criteria can be met in this case, it certainly cannot be said that the Bradshaw jurors have a "community of interest which cannot be adequately protected by the rest of the populace."

As the circuit court explained during the hearing on the petitioner's motion for a new trial, 'the reason [the Bradshaw jurors] weren't called initially is because these people lived in the immediate neighborhood of where [the alleged crime] took place.  And [these] people . . . either knew the Defendant, good or bad, knew McKinley Addair, good or bad, or heard of this situation."  In other words, this group of potential jurors was excluded because of the circuit court's belief that they were not qualified to serve on the jury due to their prior knowledge of the alleged crime and/or the persons involved.  The exclusion of these individuals from the jury panel for this reason does not make them a group with a "community of interest" that cannot be protected by other jurors.  Indeed, it is this group's shared "interest" that renders them unqualified jurors.  Simply stated, the only basis for excluding the Bradshaw jurors was the fact that they were the petitioner's neighbors and likely had knowledge of the petitioner, his victim, and the circumstances

8

surrounding the alleged crime. "The object of jury selection is to secure jurors who are not only free from improper prejudice and bias, but who are also free from the suspicion of improper prejudice or bias." *O'Dell v. Miller,* 211 W. Va. 285, 288, 565 S.E.2d 407, 410 (2002). Consequently, it cannot be concluded that jurors who may have formed an opinion regarding a defendant's culpability as a result of their geographical proximity to the alleged crime are a "cognizable" group for purposes of establishing a prima facie case of an unconstitutional jury selection method. Accordingly, our fair cross-section analysis does not need to proceed further. "[T]he lack of cognizability is dispositive of this assignment of error." *Hobbs*, 168 W. Va. at 28, 282 S.E.2d at 268.

The petitioner further argues that the circuit court failed to comply with the juror selection procedures outlined in West Virginia Code §§ 52-1-1 to -26 and that the exclusion of the Bradshaw jurors resulted in a jury panel that was no longer random as required by West Virginia Code § 52-1-1. In support of his argument, the petitioner relies upon syllabus point four of *State ex rel. Stanley v. Sine*, 215 W. Va. 100, 594 S.E.2d 314 (2004), which holds that,

> A circuit court judge adopting rules governing the selection of prospective jurors pursuant to W. Va. Code § 52-1-7(a) (1993) (Repl. Vol. 2000)[7] must comply with the public

---

[7] West Virginia Code § 52-1-7(a) provides:

> The chief judge of the circuit, or the judge in a single judge circuit, shall provide by order rules relating to the random drawing by the clerk of panels from the jury wheel or jury box for juries in the circuit and magistrate courts. The rules

policy and stated requirements of the statutory jury selection procedures set forth in W. Va. Code § 52-1-1, et seq.

*Sine*, 215 W. Va. at 101, 594 S.E.2d at 315, syl. pt. 4 (footnote added).  Upon review, we find the petitioner's reliance upon *Sine* is misplaced.

In *Sine*, a public defender sought a writ of prohibition from this Court to prevent a circuit court from selecting prospective jurors in sequential alphabetical order from the court's jury panel list.  Upon consideration of the relevant statutory provisions, it was determined that "the solitary goal of the jury selection statutes is to ensure 'that all persons selected for jury service be selected at random.'" *Id.* at 107, 595 S.E.2d at 321, quoting W. Va. Code § 52-1-1.  This Court then found that selecting prospective jurors in sequential alphabetical order was an obvious contravention of this stated legislative purpose and, thus, a violation of the statutory jury selection procedures.  *Id.*

Here, the petitioner has not presented any evidence to show that the members of his jury panel were not randomly selected.  To the contrary, the record shows that the jurors were chosen from the entire population of eligible McDowell County residents in accordance with the jury selection procedures set forth in West Virginia Code § 52-1-5

<hr>

may allow for the drawing of panels at any time. Upon receipt of the direction and in the manner prescribed by the court, the clerk shall publicly draw at random from the jury wheel or jury box the number of jurors specified.

(1993)[8] and West Virginia Code § 52-1-7.[9] The record further shows that the circuit clerk was directed to not include the Bradshaw jurors in the initial panel called for voir dire only after the jury panel had been drawn. Consequently, it cannot be concluded that the jury panel was not randomly selected.

While we find no merit to the petitioner's arguments, we wish to make clear that we in no way condone or approve of the circuit court's decision to sua sponte direct the circuit clerk to not call the Bradshaw jurors as part of the initial jury panel without any notification to the parties. Unquestionably, the better course of action would have been to remove any jurors disqualified for cause from the jury panel as part of the voir dire process. However, as the circuit court made clear, the Bradshaw jurors were not removed from the jury panel entirely but rather were only excluded from the initial panel called and would have been included in the second panel had one been needed. As we recognized in *Sine,* circuit court judges are afforded a certain amount of discretion in the jury selection process. 215 W. Va. at 107, 594 S.E.2d at 321. Moreover, "a trial court is entitled to rely upon its self-evaluation of allegedly biased jurors in determining actual juror bias." *State v. Miller*, 197 W. Va. 588, 605, 476 S.E.2d 535, 552 (1996); *see also O'Dell v. Miller*, 211 W. Va. 285, 288, 565 S.E.2d 407, 410 (2002) ("The determination of whether a prospective juror

---

[8] West Virginia Code § 52-1-5(a) directs the circuit clerk to "compile and maintain a master list of residents of the county from which prospective jurors are to be chosen."

[9] *See* note 7, *supra.*

11

should be excused to avoid bias or prejudice in the jury panel is a matter within the sound discretion of the trial judge.").

Critically, the petitioner has not come forward with any evidence to show that he did not receive a fair trial. This Court has long recognized that under our federal and state constitutions, "a criminal defendant is entitled to insist upon a jury 'composed of persons who have no interest in the case, have neither formed nor expressed any opinion, who are free from bias or prejudice, and stand indifferent in the case.'" *State v. Ashcraft*, 172 W. Va. 640, 647, 309 S.E.2d 600, 607 (1983) quoting *State v. McMillion*, 104 W. Va. 1, 8, 138 S.E. 732, 735 (1927), *overruled on other grounds by State v. Harden*, 223 W. Va. 796, 679 S.E.2d 628 (2009); *see also State v. Preacher*, 167 W. Va. 540, 552, 280 S.E.2d 559, 569 (1981) ("[a] fair trial . . . requires a fair and impartial jury."). Because the petitioner has alleged no facts to indicate that any of the jurors who sat on his jury were biased and, thus, prejudiced his right to fair trial, we find no violation of his constitutional and statutory rights.

Next, the petitioner asks us to apply the plain error doctrine to the circuit court's instruction to the jury on the offense of voluntary manslaughter. The plain error doctrine must be invoked when no objection was made below to the instruction being challenged on appeal. As Rule 30 of the West Virginia Rules of Criminal Procedure provides, in pertinent part:

12

No party may assign as error the giving or the refusal to give an instruction or the giving of any portion of the charge unless that party objects thereto before the arguments to the jury are begun, stating distinctly the matter to which that party objects and the grounds of the objection; but the court or any appellate court may, in the interest of justice, notice plain error in the giving or refusal to give an instruction, whether or not it has been made the subject of objection.

*See also* W. Va. R. Crim. Proc. 52(b) ("Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."). Here, the record reflects that not only did the petitioner, by counsel, fail to object to the circuit court's voluntary manslaughter instruction, but he specifically indicated that he had no objection. We have held that,

> Under the "plain error" doctrine, "waiver" of error must be distinguished from "forfeiture" of a right. A deviation from a rule of law is error unless there is a waiver. When there has been a knowing and intentional relinquishment or abandonment of a known right, there is no error and the inquiry as to the effect of a deviation from the rule of law need not be determined. By contrast, mere forfeiture of a right—the failure to make timely assertion of the right—does not extinguish the error. In such a circumstance, it is necessary to continue the inquiry and to determine whether the error is "plain." To be "plain," the error must be "clear" or "obvious."

Syl. Pt. 8, *State v. Miller*, 194 W. Va. 3, 459 S.E.2d. 114 (1995). In other words, a defendant who not only fails to object to a circuit court's ruling but also affirmatively states on the record that he or she has no objection cannot assert plain error on appeal.

For instance, in *Miller*, the defendant asserted plain error because the trial court did not give an instruction on self-defense. On appeal, the record showed that not

13

only did the defendant never ask for a self-defense instruction or object to the lack of such an instruction, but the defendant's counsel "explicitly stated that he was satisfied with the instructions as proposed by the court and that he had no objection to any portion of the jury charge." *Id.* at 17, 459 S.E.2d at 128. Given these facts, this Court found that the defendant voluntarily waived any right she had to have the jury instructed on self-defense and rejected her plain error argument. *Id.* at 19, 459 S.E.2d at 130.

This Court also rejected a plain error argument for the same reason in *State v. Crabtree*, 198 W. Va. 620, 482 S.E.2d 605 (1996). In that case, the defendant asserted that his constitutional right to be present at all critical stages of his criminal trial was violated when the trial judge entered the jury room during deliberations on two occasions to respond questions from the jurors without making a recording of the proceedings. *Id.* at 628, 482 S.E.2d at 613. The record showed that, in both instances, the judge asked the defendant and the State if there was any objection to him entering the jury room. Both stated they had no objection. *Id.* Upon review, this Court reiterated that,

> The first inquiry under the "plain error rule" codified in Rule 52(a) of the West Virginia Rules of Criminal Procedure is whether "error" in fact has been committed. Deviation from a rule of law is error unless it is waived. Waiver is the intentional relinquishment or abandonment of a known right. When there has been such a knowing waiver, there is no error and the inquiry as to the effect of the deviation from a rule of law need not be determined.

*Crabtree*, 198 W.Va. at 623, 482 S.E.2d at 608, syl. pt. 6. Simply stated, "when a right is waived, it is not reviewable even for plain error." *Id.* at 631, 482 S.E.2d at 616. This Court

14

found in *Crabtree* that the defendant's affirmative approval of the trial judge's request to enter the jury room to respond to juror questions without his presence was "a perfect case of waiver" and that our analysis "need go no further." *Id.* The same is true here.

In this case, the record shows that when the parties met with the trial judge to discuss the court's jury charge, the following exchange took place:

> THE COURT: Okay. So there's no objection from the State. Okay. [Defense counsel?]
>
> [DEFENDANT'S COUNSEL]: I have no objections, Your Honor.
>
> THE COURT: To the charge?
>
> [DEFENDANT'S COUNSEL]: No.

While the record shows that the petitioner's counsel did request some additional instructions, none of them related to voluntary manslaughter. Therefore, given that the petitioner unequivocally indicated that he had no objections to the circuit court's jury charge, we find that he voluntarily waived any objection to the voluntary manslaughter instruction included therein. Accordingly, pursuant to *Miller* and *Crabtree*, there was no error, and our analysis must end here.

15

## IV. Conclusion

For the foregoing reasons, the March 5, 2022, order of the Circuit Court of McDowell County is affirmed.

Affirmed.